UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO.  3:01CR162(SRU) |
| | : | |
| v. | : | |
| | : | |
| DARIO PUERTA | : | April 10, 2006 |

**GOVERNMENT'S MEMORANDUM IN AID
OF POST-*CROSBY* PROCEEDINGS ON REMAND**

The Government respectfully submits this memorandum in response to the Court's order of January 27, 2006 (modified as to the schedule by the order of March 6, 2006), inviting simultaneous written submissions from the parties on whether the Court would have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory, and otherwise in aid of proceedings on remand from the United States Court of Appeals for the Second Circuit.

**Background**

On August 1, 2002, the defendant pleaded guilty to Count One of the First Superseding Indictment charging him with conspiracy to possess with intent to distribute more than five kilograms of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A).  The defendant's guilty plea exposed him to a statutory minimum ten-year term of imprisonment.  21 U.S.C. § 841(b)(1)(A).

At the sentencing hearing on March 20, 2003, the issue was whether the defendant's guideline range should be enhanced under U.S.S.G. § 3B1.1 for being an organizer, leader, manager or supervisor.  The Presentence Investigation Report ("PSR") calculated the defendant's total offense level to be 33, which included a four-level upward adjustment under U.S.S.G. § 3B1.1(a). PSR ¶ 51.  That section of the Sentencing Guidelines applies where a defendant acted

as an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). As a result, the PSR calculated the guideline imprisonment range to be 135 to 168 months. PSR ¶ 68. Moreover, as noted in the PSR, the enhancement under U.S.S.G. § 3B1.1 made the defendant ineligible for relief under the so-called safety valve provisions of the Sentencing Guidelines and Title 18, United States Code, Section 3553(f). PSR ¶ 45. *See* U.S.S.G. § 2D1.1(b)(7) & § 5C1.2(a)(4); 18 U.S.C. § 3553(f)(4).

At sentencing, the defendant contested that he was an organizer or leader under U.S.S.G. § 3B1.1(a). Sentencing Transcript at 18-27, 32-34 ("Tr. __.").

To remind the Court, this case involved the defendant's participation in a cocaine distribution conspiracy in which two of the defendant's co-conspirators, David Taborda and Jaime Mendez, were stopped on October 26, 2000 by a Massachusetts state trooper while transporting 10 kilograms of cocaine. During the course of the traffic stop, the trooper discovered the cocaine and arrested Taborda and Mendez. Given that the cocaine belonged to Colombian drug cartel members, the defendant and his remaining co-conspirators had to deal with the fact that they needed to account for the cocaine. The PSR reflected consensually recorded conversations involving the defendant showing his efforts to deal with the loss of the cocaine and to apportion the cost among his co-conspirators. These efforts were the focus of the issue of whether the defendant was acting as a leader or organizer of the criminal activity, as defined in U.S.S.G. § 3B1.1(a). *See* PSR ¶¶ 17-38.

At sentencing, the Court opened the discussion on the issue of the defendant's role in the offense by noting that an adjustment under U.S.S.G. § 3B1.1 takes into account not simply the act of conviction, but all relevant conduct, Tr. 16, a proposition with which defense counsel did

2

not take issue. Tr. 17. The Court added that this was significant "because I don't see that Mr. Puerta was the leader of the drug distribution conspiracy, but he was apparently a leader in the efforts, that is the relevant conduct that followed seizure of the cocaine; specifically efforts to collect on the money owed. And it appears to me that in connection with that activity, which I think is within the scope of [relevant[1]] conduct, that he directed at least one other person and that there were . . . a total of at least five participants involved in that activity and so it would appear that the adjustment for role in the offense should be made under 3b1.1." Tr. 16-17.

The Court then turned to the arguments of counsel on the issue of the defendant's role in the offense, expressing significant skepticism with defense counsel's contention that the defendant did not qualify for an enhancement under U.S.S.G. § 3B1.1. For instance, when defense counsel argued that all the defendant was doing was attempting to get his money back, the Court interjected, "But he's instructing those further down the line what to do; specifically Mr. [Arboleda]."[2] Tr. 22. When counsel said "I don't see that," the Court pointed him to paragraph 29 of the PSR, adding:

> Puerta told [Arboleda] he wanted him to go to Colombia to discuss the problem. Puerta instructed [Arboleda] to take the indictment – that is the arrest report to Colombia, so forth and so forth.

Tr. 22. Similarly, when defense counsel pressed his argument that all the defendant was doing was trying to collect money and that the defendant did not become "a leader and subject to a four level increase" simply because of such efforts, the Court responded by saying:

---

[1] The transcript uses the word "regular" – i.e., "regular conduct" – but the context indicates that this likely was a mis-transcription of "relevant." *See* Tr. 16-17.

[2] The transcript spells this individual's name as "Ashlata." *See* Tr., *passim*.

> No, no, it's not simply that he was trying to collect the money, it's that he was – because he paid it off, he was directing others who were also potentially responsible for the money. He was telling [Arboleda] what to do, he was making arrangements and instructing people in the language of the PSR.

Tr. 26. Elsewhere, the Court noted that "as far as I can tell, he [the defendant] was directing the effort to get the meeting in Rhode Island to try and put this on the Osorios and get the money collected." Tr. 25.

The Government responded to the defense's arguments and marshaled the evidence demonstrating that the defendant was properly characterized as a leader under U.S.S.G. § 3B1.1. Tr. 27-32. Specifically, the Government noted that the defendant had paid off the debt and then took charge of the effort collect from others. Tr. 28. The Government also pointed out that the defendant directed Arboleda to go to Colombia to deal with the problem, persuading him to make the trip and telling him he was going to pay for his travel expenses. Tr. 29. The Government further noted that the defendant organized meetings relating to the issue of the loss, including one in Rhode Island, and was responsible for the decision to investigate the circumstances of the seizure of the cocaine. Tr. 29.

Defense counsel offered a brief reply to the Government's arguments. Then he suggested an alternative that, if anything, his client was at most a "manager" or "supervisor," not an "organizer" or "leader," as those terms are defined in the Guidelines, and therefore would be subject to only a three-level role enhancement under U.S.S.G. § 3B1.1(b), rather than a four-level enhancement under U.S.S.G. § 3B1.1(a). Tr. 33-34. The Government noted that a concession by the defendant that he was a manager or supervisor would resolve the Guidelines issues. Tr. 34. Defense counsel thereafter consulted with the Government's counsel and with the defendant and

put on the record that the parties had reached an agreement that a three-level upward adjustment was appropriate under U.S.S.G. § 3B1.1(b) on the ground that the defendant was a manager or supervisor. Tr. 35. Specifically, defense counsel advised the Court that "the defendant will concede that he is a manager or supervisor and I think the government would be satisfied with the three level enhancement as opposed to the four." Tr. 35. The Court accepted that compromise, noting that "I was about to come to that conclusion anyway, reading some additional cases, so I'm glad you got there on your own." Tr. 35.

As a result, the Court calculated the total offense level to be 32, with a Criminal History Category I, resulting in a guideline range of 121 to 151 months imprisonment. Tr. 35-36. Given that the defendant was subject to an enhancement under U.S.S.G. § 3B1.1, he was not eligible for relief from the 120-month mandatory minimum sentence. See 18 U.S.C. § 3553(f)(4). Defense counsel thereafter abandoned any argument that the Court should downwardly depart from the bottom of the guideline range, 121 months, to the statutory minimum 120 months. Tr. 39. The Court ultimately sentenced the defendant to 121 months in prison to be followed by four years of supervised release, along with a $100 mandatory special assessment. Tr. 41-42.

## Discussion

In an order dated August 5, 2005, the United States Court of Appeals for the Second Circuit ordered a limited remand in this case, in light of the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). This Court then issued an order inviting simultaneous briefing from the parties on the question whether it would have imposed a non-trivially different

sentence in the case if the Sentencing Guidelines had been advisory. This is the Government's submission in that regard.

In *Booker*, the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a remedy, the Court severed and excised the statutory provision that made the Guidelines mandatory, 18 U.S.C. §3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id*. at 765-66.

In *Crosby*, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to *Booker* "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." *Crosby*, 397 F.3d at 117. In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed *a materially different* sentence, under the circumstances existing at the time of the original sentence, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." *Id*. (emphasis added). Arguments addressing factual matters that have arisen since sentencing are immaterial to the question presented, as the Court must determine whether

6

to re-sentence based solely on "the circumstances existing at the time of the original sentence." *Id*.

Sentencing in the post-*Booker* regime, as explained in *Crosby*, now involves two analytic stages: first, a determination of the applicable guideline range (including any departures); and second, a determination of whether in light of the Guidelines and the other factors listed in 18 U.S.C. §3553(a), there is any reason to impose a non-Guidelines sentence. *Crosby*, 397 F.3d at 113.

Here, the record reflects that the Guidelines were properly calculated. As a result of defense counsel's stipulation to a three-level upward adjustment as a manager or supervisor under U.S.S.G. § 3B1.1(b) – a conclusion the Court expressly endorsed – the defendant's guideline imprisonment range was 121 to 151 months. The Court sentenced the defendant to 121 months in prison. The determination that the defendant was a manager or supervisor under the Guidelines precluded him from any safety-valve relief from the mandatory minimum sentence of 120 months' imprisonment. *See* 18 U.S.C. § 3553(f)(4). The Second Circuit recently upheld against challenges based on *Booker* a district court's obligation to apply the Guidelines in determining whether a defendant is entitled to relief under the safety-valve provisions in 18 U.S.C. § 3553(f), and a district court's authority to find facts at sentencing that would determine whether such relief must be denied because of a defendant's role as a leader, organizer, manager or supervisor, as those terms are defined by the Guidelines. *See United States v. Holguin*, 436 F.3d 111, 116-19 (2d Cir. 2006).

If the Guidelines had been merely advisory at the time of sentencing, the most the Court could have reduced the defendant's sentence would have been one month, given the 120-month

mandatory minimum resulting from the parties' stipulation regarding the defendant's role in the offense and the Court's agreement with that stipulation. A one-month reduction in the sentence of 121 months would be less than one percent of the sentence of imprisonment. Under these circumstances, it would be difficult to contend that such a limited reduction in the defendant's substantial sentence would constitute a "materially different" sentence. *Crosby*, 397 F.3d at 117 (the pertinent question is "whether a sentencing judge would have imposed *a materially different* sentence, under the circumstances existing at the time of the original sentence . . . ."). In this regard, it is noteworthy that, at sentencing, once the Court adopted the guideline range as 121 to 151 months, defense counsel dropped his argument for a downward departure, recognizing that it would only reduce the minimum sentence by one month. *See* Tr. 39.

Moreover, the Court's sentence under the Guidelines served as an appropriate balance of all the factors set forth in 18 U.S.C. § 3553(a), and was eminently reasonable. The crime at issue in this case involved a conspiracy to distribute a substantial amount of cocaine involving multiple co-conspirators. The nature of the crime itself is so serious that Congress imposed the hefty mandatory minimum penalty of ten years. The Court appreciated these factors in sentencing the defendant. In reaching its sentence, the Court specifically addressed the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A); to provide "adequate deterrence to criminal conduct," § 3553(a)(2)(B); and to provide for the rehabilitation of the defendant, § 3553(a)(2)(D). Tr. 40. The sentence also reflected the "nature and circumstances of the offense," a serious drug-trafficking offense, and the Court's consideration of the defendant's personal circumstances, as required by 18 U.S.C. § 3553(a)(1). *See* Tr. 40-41.

The Court did express its view that there was no reason to sentence the defendant above the minimum sentence permissible under the Guidelines. Tr. 40. But that comment does not suggest that the Court perceived the ultimate sentence of 121 months' imprisonment to be unreasonable or excessive. Instead, it is best interpreted as showing the Court's opinion that the sentence imposed was the appropriate sentence within the Guidelines. In the end, a Guidelines sentence here properly addressed all the relevant sentencing factors, and there is no reason to conclude that a non-Guidelines sentence of one month less would more appropriately address those same factors. Given the substantial sentence imposed, a sentence of one month less would not have been materially different, as defense counsel implicitly recognized in abandoning the defense's motion for a downward departure. Tr. 39.

## Conclusion

For the foregoing reasons, in conformity with the procedures outlined in *Crosby*, this Court should indicate for the record that, after consideration of the defendant's sentencing range under the Guidelines and all of the factors listed in 18 U.S.C. § 3553(a), the defendant should not be re-sentenced.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

/S/
PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT26654
UNITED STATES ATTORNEY'S OFFICE
915 LAFAYETTE BOULEVARD
BRIDGEPORT, CT 06604
(203) 696-3000

# CERTIFICATE OF SERVICE

This is to certify that I caused a copy of the foregoing GOVERNMENT'S MEMORANDUM IN AID OF POST-*CROSBY* PROCEEDINGS ON REMAND to be sent by first-class mail to the following on April 10, 2006:

John T. Walkley, Esquire
450 Monroe Turnpike
Suite 101
Monroe, Connecticut 06468


This is also to certify that a courtesy copy of the foregoing was hand-delivered to the following on April 10, 2006:

The Honorable Stefan R. Underhill
United States District Judge
United States Courthouse
915 Lafayette Boulevard
Bridgeport, Connecticut 06604


U.S. Probation Office
915 Lafayette Boulevard
Bridgeport, Connecticut 06604


/S/_____
PAUL A. MURPHY
ASSISTANT UNITED STATES ATTORNEY