UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

-------------------------------------------------------x

UNITED STATES OF AMERICA,

       Plaintiff                                      Docket No. 3:01CR-162 (SRU)

vs.

DARIO PUERTA,                                   July 31, 2006

       Defendant

-------------------------------------------------------x

**DEFENDANT'S MEMORANDUM IN AID OF**
**POST-*CROSBY* PROCEEDINGS ON REMAND**

By Order of the Second Circuit Court of Appeals, filed August 5, 2005, the above-captioned criminal matter was remanded to the District Court for further proceedings in conformity with *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Thereafter, this Court published a Scheduling Order seeking submissions from the government and the defendant to assist the Court in determining whether or not the Court would have imposed a non-trivially different sentence in this case if the Sentencing Guidelines had been advisory at the time of the original sentencing hearing. Pursuant to the invitation of the Court, defendant provides this Memorandum.

**Procedural Background**

On August 1, 2002, Dario Puerta entered a plea of guilty to Count One of the First Superseding Indictment charging Mr. Puerta with conspiracy to possess with the intent to distribute and distribution of five kilograms or more of cocaine, in violation of 21 U.S.C. §§846 and 841(b)(1)(A). Based upon his plea and the requirements of the federal statute,

besides the sentence to which he would be exposed pursuant to the federal sentencing guidelines, Mr. Puerta was subject to mandatory minimum sentence of ten (10) years. 21 U.S.C. §841(b)(1)(A).

Prior to the sentencing hearing in Mr. Puerta's case, both the government (dated March 19, 2003) and the defendant (dated March 20, 2003) filed memoranda in aid of sentencing. According to the pleadings at that time, the only issues that remained at the time of sentencing on March 20, 2003, were whether or not Mr. Puerta's guidelines should be enhanced due to his role as an manager, organizer, or supervisor as defined by §3C1.1 U.S.S.G. and, as a result of that determination, whether or not Mr. Puerta qualified for a reduction in his ultimate sentence – and a sentence below the mandatory minimum sentence – of ten (10) years based upon "safety valve" treatment. 18 U.S.C. §3553(f), §5C1.2 U.S.S.G.

At sentencing, the Court discussed with counsel the requirements for enhancement as a leader or organizer and focused on the language of §3B1.1 U.S.S.G. After argument on this issue, but before the Court resolved that the requirements of the sentencing guidelines had been met, the parties "reached an accommodation" and agreed that Mr. Puerta was a "manager or supervisor" and that an increase of three levels was appropriate. T. 3/20/2003, p. 35. The Court accepted the stipulation and voiced that a three-level enhancement is what he had concluded as well. The agreement on the enhancement removed Mr. Puerta from further consideration for safety valve treatment. 18 U.S.C. §3553(f), §5C1.2 U.S.S.G.

Based upon the findings made at sentencing and the agreements or concessions of the parties at that time, the Court found a total offense level of 32, a criminal history category of I, and a sentencing guideline range of between 121 and 151 months. Defendant remained subject to the mandatory minimum sentence of 10 years. Counsel for Mr. Puerta did not press argument for a downward departure of one month – the difference between the low end of the sentencing range and the statutory mandatory minimum – but requested that the Court sentence the defendant to 121 months, the bottom of the otherwise applicable

range. The Court imposed a sentence of 121 months to be followed by a term of supervised release of four (4) years. T. 3/20/2003, p. 41.

On appeal, counsel for defendant filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), advising the Court of Appeals that there were no non-frivolous issues to be raised or pursued on appeal. Following defense counsel's filing of his *Anders* brief and motion seeking to withdraw as counsel on appeal, the government filed its motion for summary affirmance. Thereafter, Mr. Puerta filed a *pro se* Memorandum on appeal, certified as of May 17, 2004, opposing appellate counsel's claim that there were no non-frivolous issues on appeal. Mr. Puerta asserted in his Memorandum that the District Court had erred in its finding that defendant qualified as a manager/supervisor for guidelines purposes and, as a result, also failed to deem Mr. Puerta qualified for safety valve treatment under 8 U.S.C. §3553(f) and §5C1.2 U.S.S.G.

After consideration of all of the pleadings on appeal, the Second Circuit granted the motions of appellate defense counsel and the government by Order dated October 14, 2004. Concomitant with the Court of Appeals consideration of the issues in that venue, Mr. Puerta filed motions in the District Court – the first dated September 3, 2003, and the second dated October 31, 2003 – seeking modifications of the sentence imposed by the Court at the March 20, 2003, hearing. Both of Mr. Puerta's motions were denied by the Court in a Ruling dated January 20, 2004.

Subsequently, via Order of the Court of Appeals for the Second Circuit dated August 5, 2005 (Mandate issued on December 28, 2005), Mr. Puerta's case was returned to the docket of the District Court for further proceedings in light of the decision of the United States Supreme Court in *United States v. Booker*, 125 S.Ct. 738 (2005), and the Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), incorporating the findings of the Supreme Court in *Booker*. The District Court thereafter invited submissions from the government and the defense regarding the action required of the Court at this time.

**Discussion**

Initially, undersigned counsel for defendant provides to the Court that he submits this Memorandum in Mr. Puerta's matter in conjunction with the pleadings previously filed by the defendant, pro se, on December 20, 2005, entitled "*Defendant's View on Resentencing Pursuant to Remand*." While counsel will not revisit points raised by the defendant in his pro se submission, it is likely that areas covered in that pleading will be discussed in this Memorandum.

In handing down its decision in *Booker*, the Supreme Court held that the United States Sentencing Guidelines, to the extent that those guidelines were *mandatory*, violated the same Sixth Amendment principles outlined in *Blakely v. Washington*, 124 S.Ct. 2531 (2004), and were, therefore, unconstitutional. From that point forward, the Sentencing Guidelines became advisory. But the Guidelines were not abrogated entirely by *Booker*. A sentencing scheme has resulted whereby the requirements of the Guidelines must be considered by the District Court at the time of sentencing, but, after due consideration and deference having been given to the language of the Guidelines, the Court may impose the sentence it deems "reasonable." A sentencing court must heed the requirements of 18 U.S.C. §3553 in composing a sentence that is "sufficient, but not greater than necessary." Once imposed, a sentence is subject to review on appeal for "reasonableness." *United States v. Booker*, *supra*, 125 S.Ct. at 765-66.

The decision of the Supreme Court in *Booker* was followed by the ruling in *United States v. Crosby*, *supra*. While all prior sentences that had been imposed under the Guidelines were not subject to review or provide an occasion for re-sentencing, the Second Circuit held that remand would be needed in those instances where "a sentencing judge would have imposed a materially different sentence, under circumstances existing at the time of the original sentence, if the judge had discharged his or her obligations under the post-Booker/Fanfan regime and counsel had availed themselves of their new opportunities to present relevant considerations." *United States v. Crosby*, *supra*, 397 F.3d at 117. The

new sentencing structure in the post-*Booker*, post-*Crosby* universe permitted the Court to respect the Sentencing Guidelines in their advisory capacity, reflect upon and incorporate the factors detailed in 18 U.S.C. §3553(a), and impose what would otherwise be characterized as a non-Guidelines sentence. Under this new system, as long as the ultimate sentence imposed by the District Court was "reasonable," it would not be disturbed on appeal.

In Mr. Puerta's case, the principal issue at this stage revolves around whether or not the Court will abide by its determination at the original sentencing hearing that Mr. Puerta was a "manager or supervisor" as that decision is guided by the sentencing guidelines as well as federal statute. The defendant is concerned here that the Court may consider itself to be bound by his stipulation at sentencing that a three-level upward adjustment was reasonable based upon the facts in defendant's case. Obviously, even in a post-*Booker* setting, a finding that a defendant played such a role in a criminal case excludes that defendant from further consideration for and relief through safety valve treatment. 18 U.S.C. §3553(f).

The distinction that the defendant provides to the Court in this Memorandum, however, is that, had Mr. Puerta been sentenced in the first instance in a post-*Booker* era, it is possible that defendant, through counsel, would not have acceded to the upward adjustment and would not have stipulated to the finding that made him ineligible for a reduced sentence under 18 U.S.C. §3553. As a result, in submitting this Memorandum during these post-*Crosby* proceedings, defendant petitions the Court to re-consider whether it would have made the same finding regarding defendant's role in the offense in his case, or, within the advisory framework of the sentencing guidelines post-*Booker*, the Court would have reviewed and judged those relevant facts in a different light and arrived at a different conclusion.

Whereas the Court, in a post-*Booker* setting, may have reached a different conclusion as to Mr. Puerta's role in the offense in his case, defendant petitions the Court to

review its original sentence and, if required, conduct a new sentencing hearing where this issue can be fleshed out anew.  Had the Court determined that Mr. Puerta was entitled to relief pursuant to the safety valve, defendant's guidelines would have been reduced by two additional levels, the mandatory minimum sentence of ten (10) years would not have been applicable, and Mr. Puerta would have faced a sentence of between 70 and 87 months.  Defendant asserts that, in the factual scenario presented in his case and after consideration of Mr. Puerta's lack of any prior criminal history, a sentence within the range that could have applied and now should apply in his case would be reasonable.

      Further, and alternatively, if the Court were to conclude that its decision as to Mr. Puerta's role in the offense was correct even in a post-*Booker* setting, defendant petitions the Court to consider whether it would have afforded him – again in a post-*Booker* setting – a downward departure of one (1) month to the otherwise mandatory minimum sentence of ten (10) years.  Although argument could be made that such a reduction would not result in a "materially different sentence," any period of time to which an incarcerated defendant may be entitled to or awarded relief from imprisonment is significant.  And a change in any period of imprisonment that is significant, defendant would argue, must be materially different.  Defendant appeals to the Court to consider this reduction, in the alternative, either through the imposition of a non-Guidelines sentence of 120 months or by way of a downward departure of one month based upon the factors raised at the time of the original sentencing hearing and Mr. Puerta's frustrated pursuit of safety valve relief.  Had the Court determined at sentencing merely that a two-level rather than a three-level role adjustment was appropriate, that additional month reduction would have been reflected in the sentence that was imposed.

**Conclusion**

For all of the foregoing reasons and based upon the issues as they have been outlined for the Court by the defendant above, Mr. Puerta respectfully submits that a new sentencing hearing should be conducted. At the new sentencing hearing, defendant asserts that the Court should impose a new sentence upon defendant, in compliance with the new rule of and procedures required by *United States v. Booker*, *supra*, and *United State v. Crosby*, *supra*, and the statutory factors provided by 18 U.S.C. §3553(a).

    Respectfully submitted,

    DEFENDANT, DARIO PUERTA

By: _____
    John T. Walkley
    450 Monroe Turnpike, Suite 101
    Monroe, Connecticut 06468
    Telephone (203) 261-1911
    Facsimile (203) 268-1433
    Email Address: litigater2@aol.com
    Fed. Bar No. ct04341

## **CERTIFICATION**

It is certified hereby that a copy of the foregoing Memorandum was dispatched via first class mail, postage prepaid, this 1st day of August, 2006, to:

Paul A. Murphy, Esq.
Asst. United States Attorney
Office of the United States Attorney
915 Lafayette Boulevard
Bridgeport, Connecticut 06604-4759

_____
John T. Walkley